UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

TALIB ALSAIFULLAH,

                Plaintiff,

    - against -

NURSE ADMINISTRATOR FURCO, in her
official and individual capacity,
MEDICAL DIRECTOR GENOVESE, in her
official and individual capacity, and
SUPERINTENDENT HEATH, in his official
and individual capacity.

                Defendants.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 8/2/13

**OPINION & ORDER**

12 Civ. 2907 (ER)

RAMOS, D.J.:

    *Pro Se* Plaintiff Talib Alsaifullah ("Plaintiff" or "Alsaifullah"), while incarcerated at Sing

Sing Correctional Facility, commenced this civil rights action pursuant to 42 U.S.C. § 1983

("Section 1983") against Defendants Nurse Administrator B. Furco, Medical Director Maryann

Genovese, and Superintendent Phillip Heath.  Plaintiff alleges violations of his rights to

substantive due process and to equal protection of the laws pursuant to the Fourteenth

Amendment, and to be free of cruel and unusual punishment pursuant to the Eighth Amendment.

He further alleges claims under the Health Insurance Portability and Accountability Act

("HIPAA"), the Americans with Disabilities Act of 1990 ("ADA"), and state law claims for

violation of New York State Public Officer Law and New York State Public Health Law.

Complaint ("Compl."), Doc. 2.  Defendants move to dismiss Plaintiff's Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6).  Doc. 29.  For the reasons discussed below,

Defendant's motion to dismiss is GRANTED.

## I.  Background

### a.  Factual Background[1]

#### i.  Grievance Hearings

Plaintiff is a prisoner at Sing Sing Correctional Facility ("Sing Sing") and has Hepatitis C.  Compl. at 3-5.  On July 21, 2011, Plaintiff attended an Inmate Grievance Review Committee ("IGRC") hearing ("IGRC hearing" or "grievance hearing") concerning his requests for medical accommodations, which included obtaining a medical shower, a bus pass and ground-floor housing.  *Id.*, Ex. C.  Attendees at the meeting included Defendant Nurse Administrator B. Furco ("Nurse Furco"), Corrections Counselor T. Chaffin, Sergeant B. Thorpe, and inmates Carlos Leiva, Gregory Chrysler and D. Alweiss.  *Id.*, Exs. B-C.  Nurse Furco was present at the hearing as "a consultant pertaining to medical procedures and protocol," and did not have a vote towards the outcome of the hearing.  *Id.*, Ex. I; *see id.*, Ex. A-4.  Plaintiff alleges that while he was discussing "how he cannot tolerate specific medications" because of his liver problems, Nurse Furco "blurted out":  "That medication don't affect your Hep C."  *Id.*, Ex. C.  Plaintiff responded that he did not appreciate her disclosing his medical information and Nurse Furco replied, "Duh, you mentioned it the first time."  *Id.*

After the July 21 grievance hearing, Plaintiff notified Defendants Medical Director Genovese ("Director Genovese") and Superintendent Heath ("Superintendent Heath") of the incident by filing a grievance.  Compl. at 4; *id.*, Ex. B.  On September 27, Superintendent Heath issued an "Inmate Grievance Program:  Superintendent Response" ("Superintendent Response"), which concluded that Nurse Furco had divulged Plaintiff's Hepatitis C condition "inadvertently."  *Id.*, Ex. C.  The Superintendent Response also noted that (1) on September 23, the Director of

---

[1] The Court notes that the pagination in the Complaint is haphazard.  Accordingly, the Court cites to the document and page number designation on the Court's electronic filing system (ECF/Pacer).

Facility Health Services met with Nurse Furco to discuss HIPAA and medical protocol and (2) inmate Gregory Chrysler, present at the grievance hearing, stated that Nurse Furco had disclosed Plaintiff's condition "inadvertently."  *Id.*

Plaintiff alleges that Superintendent Heath failed to "accept or deny" his grievance and that this failure was a violation of the prison grievance policy procedures.  Compl. at 3.  Plaintiff also cites to a written statement by Gregory Chrysler where he explains that he had "no opinion as to whether [Nurse Furco's] statement was inadvertent," and that his statement as it appears in the Superintendent Response "must have been misconstrued."  *Id.*, Ex. E.  Plaintiff subsequently appealed Superintendent's Heath's decision to the Inmate Grievance Program:  Central Office Review Committee ("CORC"), *id.*, Ex. F., and on January 18, 2012, CORC upheld Superintendent Heath's decision.  *Id.*, Ex. G.

On July 28, 2011, Plaintiff attended a second IGRC hearing intended to address his allegation that Nurse Furco improperly disclosed his medical information at the July 21 hearing. *Id.*, Exs. H-K.  Plaintiff claims that Nurse Furco attended the July 28 hearing and that her attendance presented a "conflict of interest."  *Id.*  He further alleges that Nurse Furco "insisted that she stay [in the room] . . . even though the plaintiff expressed . . . [that] he felt uncomfortable . . . due to [Nurse Furco's] disregard for [his] health and safety."  Compl. at 4.

### ii.  Plaintiff's Fall and Injury

On July 6, 2011, Plaintiff fell after tripping over a broken concrete step and alleges that he injured himself because the prison facility had failed to install hand rails on the top portion of the walkway in the school tunnel.  Pl.'s Opp. Mem. Doc. 25 at 8; Compl., Exs. L-N, P.  Plaintiff filed an Inmate Grievance Complaint on July 14 and asked that "[h]and rails are provided or I am accommodated to not be required to walk down or up [the] walkway."  Compl., Ex. L.  On

3

August 2, the IGRC denied Plaintiff's grievance and noted: "The tunnel is scheduled to be renovated, the status of handrails throughout the entire tunnel is unknown. The grievant is advised to address a bus pass with his medical provider." *Id.*, Ex. M. Plaintiff appealed the IGRC ruling to the Superintendent the following day. *Id.* On August 12, Superintendent Heath issued a Superintendent Response which stated that the tunnel was scheduled for renovation in the future and "[i]f [Plaintiff] feels he cannot navigate the stated tunnel due to medical issues, he should review the reasons why with facility medical staff." *Id.*, Ex. N. On February 15, 2012, CORC denied Plaintiff's appeal of Superintendent Heath's decision and noted that the school tunnel renovation plans did not include installing handrails on the top portion of the walkway. *Id.*, Ex. O ("CORC notes that the plans designed by OGS are code compliant and that handrails will not be installed on the top portion of the walkway."). CORC also indicated that "[w]ith respect to the grievant's appeal, CORC advises him to address his medical concerns at sick call and any reasonable accommodation requests in accordance with Directive #2614." *Id.*

Plaintiff alleges that Superintendent Heath "contributed to the plaintiff significantly injuring his right shoulder, right thumb and right index finger due to falling in the 'tunnel' area of a walkway that failed to have safety precautions in place, . . . [and only had] handrails in certain parts of the tunnel . . . ." *Compl.* at 5. He further alleges that Superintendent Heath "knew this problem [of lack of handrails] existed but failed to remedy the situation," *id.* at 8, and claims that Superintendent Heath is "responsible for [the facility's] upkeep and safety." Pl.'s Opp. Mem. Doc. 25-1 at 1. In his opposition papers, Plaintiff further alleges that Superintendent Heath "[d]id not make available another mode of travel within the facility to avoid the prospect of an injury occurring on the state property he was responsible for," and that Plaintiff sought the handrails to accommodate his "daily travels." Pl.'s Opp. Mem. Doc. 25-2 at 5. However,

Plaintiff also claims that, at some unspecified point in time, "he was finally accommodated with a bus pass." *Id*. at 6.  He states that "[t]his was done by the diligent efforts of plaintiff, via grievance and [the] medical department." *Id*.

### b.  Procedural History

Plaintiff requested leave to proceed in *forma pauperis* on April 12, 2012 and filed a Complaint with the Court that same day.  Doc. 1.  Plaintiff brings suit under Section 1983 for violations of his rights to substantive due process and to equal protection of the laws pursuant to the Fourteenth Amendment, and to be free of cruel and unusual punishment pursuant to the Eighth Amendment.  He further alleges claims under HIPAA and the ADA, and state law claims for violation of New York State Public Officer Law and New York State Public Health Law. Compl. at 2-8.

Plaintiff claims that each Defendant "acted under the color of state [law], while acting [in] the scope of their official capacities and obligations and within their individual capacities . . . ." *Id*. at 4.  With respect to Nurse Furco, Plaintiff alleges that her disclosure of his Hepatitis C condition at the first grievance hearing and attendance at the second grievance hearing violated the Eighth Amendment, and that her disclosure also violated Plaintiff's right to substantive due process and equal protection under the laws pursuant to the Fourteenth Amendment, as discrimination against an individual with a disability.  *Id*. at 4-6.  Plaintiff further alleges that Nurse Furco violated HIPPA and state law.  *See generally id*. at 6.

As against Director Genovese, Plaintiff recites the same allegations and further notes that as a supervisor of Nurse Furco, Director Genovese was "aware" of her subordinate's acts and failed to properly train or supervise Nurse Furco.  *Id*.  According to Plaintiff, "[p]rior to any decision of [Superintendent Heath] or CORC, [D]efendant Genovese was made aware that her

subordinate had violated HIP[A]A laws, but only acted after the fact and not in a meaningful way as to admit that acts of divulging confidential information is punishable civilly or criminally, as well as being subjected to departmental discipline." *Id.*

Finally, as to Superintendent Heath, Plaintiff asserts the same allegations as against the other two defendants and claims that he failed to train and supervise Nurse Furco and Director Genovese, and that he failed to accept Plaintiff's grievance filing. *Id.* at 7-8. Plaintiff further alleges that Superintendent Heath violated Plaintiff's rights under the Eighth Amendment by failing to maintain a safe environment and provide proper accommodations to prisoners with disabilities by ensuring that handrails were placed throughout the walkway "that had already been deem[ed] to be in need of repairs." *Id.* at 8. Finally, Plaintiff asserts that Superintendent Heath failed to correct a policy or custom of not accommodating disabled inmates. *Id.*

On December 20, 2012, Defendants filed a motion to dismiss the Complaint, Doc. 29, Plaintiff responded in opposition on October 23, 2012, Doc. 25,[2] and on December 7, 2012, filed a document which the Court will treat as a surreply.[3] Doc. 34.

---

[2] A review of the ECF/Pacer page and the Court's records indicates that Defendants' moving papers were inadvertently docketed several weeks after Defendants had submitted their papers.

[3] Although this Court's individual rules require a party to obtain the Court's permission prior to the filing of a surreply, *see* Individual Rule 2.B.i., in light of Plaintiff's *pro se* status, the Court will accept this filing and consider it to the extent that it is relevant. Moreover, although courts generally "may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss," the mandate "to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials." *Gadson v. Goord*, No. 96 Civ. 7544 (SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering *pro se* plaintiff's affidavit in opposition to defendant's motion to dismiss)). Accordingly, where a *pro se* plaintiff is faced with a motion to dismiss, a court may consider materials outside the complaint "to the extent that they are consistent with the allegations in the complaint." *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004). The Court therefore considers the factual allegations contained in Plaintiff's opposition papers, including his surreply, to the extent that they are consistent with the allegations contained in the Complaint.

## II. Discussion

### a. Standard of Review

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true all of the factual allegations from the complaint, and draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must adhere to Fed. R. Civ. P. 8(a), which has been interpreted to require that it contain enough factual matter for the claim to be plausible on its face. *Id.* (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Rule 8(a) "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] Complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In the case of a *pro se* plaintiff, a court is obligated to construe the complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret the claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise

a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal

quotation marks omitted).  The Second Circuit recently held in *Walker v. Schult*, 717 F.3d 119

(2d Cir. 2013) that "[a] district court deciding a motion to dismiss *may* consider factual

allegations made by a *pro se* party in his papers opposing the motion."  717 F.3d at 122 n.1

(emphasis added) (citing *Gill*, 824 F.2d at 195 (considering a *pro se* plaintiff's affidavit in

opposition to a motion to dismiss in addition to those in the complaint)).

> **b.  Section 1983 claims**

To state a claim under 42 U.S.C. § 1983, a defendant must have been acting under the

"color of state law" when he deprived the plaintiff of a constitutional or federal statutory right.

*West v. Atkins*, 487 U.S. 42, 48 (1986).  Section 1983 does not create any rights, but merely

provides "a procedure for redress for the deprivation of rights [already] established."  *Sykes v.

James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).  The Second Circuit has held that it is

"well settled in this Circuit that personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under section 1983."  *Farrell v. Burke*, 449

F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)) (internal

quotation marks omitted).

> **i.  Constitutional Claims against Defendants in their Official Capacities**

Plaintiff's Complaint seeks damages from Defendants in their individual and official

capacities.  Compl. at 4.  The Eleventh Amendment, however, precludes suits for monetary

damages from proceeding against states or state officials acting in their official capacity, unless

the state has waived its sovereign immunity.  *Florida Dep't of State v. Treasure Salvors, Inc.,*

458 U.S. 670, 684 (1982) (citing *Alabama v. Pugh,* 438 U.S. 781 (1978)); *accord McMilian v.

Monroe Cnty., Ala.,* 520 U.S. 781, 785 n.2 (1997) ("[A] suit against a governmental officer in his

official capacity is the same as a suit against [the] entity of which [the] officer is an agent."
(alterations in original) (citations and internal quotation marks omitted)).  Section 1983 does not
abrogate Eleventh Amendment immunity, *Quern v. Jordan,* 440 U.S. 332, 338, 345 (1979), and
New York has not consented to Section 1983 suits in federal court.  *Gross v. New York*, 428 F.
App'x 52, 53 (2d Cir. 2011) (citing *Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35,
38–39 (2d Cir. 1977)).  Damages are thus not recoverable in a Section 1983 action against state
officials acting in their official capacities.  *Davis v. New York,* 316 F.3d 93, 101-02 (2d Cir.
2002).  Here, Plaintiff only asserts claims for monetary damages, Compl. at 7, and, accordingly,
all of Plaintiff's constitutional claims against Defendants in their official capacities are dismissed
for lack of subject matter jurisdiction.  *Jean-Laurent v. Lawrence*, 12 Civ. 1502 (JPO) (SN),
2013 WL 1129813, at *4 (S.D.N.Y. Mar. 19, 2013).  However, Plaintiff's allegations against
Defendants in their individual capacities are not barred by the Eleventh Amendment, *Hafer v.
Melo,* 502 U.S. 21, 27-31 (1991), and the Court addresses the merits of those claims below.

### ii.  Substantive Due Process:  Right to Privacy Claim

Plaintiff alleges that Defendants violated his right to privacy when Nurse Furco disclosed
his Hepatitis C status at the July 21, 2011 prison grievance hearing.  The United States
Constitution recognizes a right to privacy which protects "the individual interest in avoiding
disclosure of personal matters."  *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57,
63 (2d Cir. 2011) (citing *Doe v. City of N.Y.*, 15 F.3d 264, 267 (2d Cir. 1994) (quoting *Whalen v.
Roe,* 429 U.S. 589, 599 (1977)).  Specifically, the Due Process Clause of the Fourteenth
Amendment protects a "right to privacy [that] can be characterized as a right to
'confidentiality,'" which "includes the right to protection regarding information about the state
of one's health."  *Doe,* 15 F.3d at 267.  "This constitutional right to privacy extends in a *limited*

way to prisoners as well." *Matson*, 631 F.3d at 64 (emphasis added) (citing *Powell v. Schriver,* 175 F.3d 107, 112 (2d Cir. 1999) ("[I]nmates retain those constitutional rights that are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system.") (internal quotation marks and alterations omitted)).

However, "the interest in the privacy of medical information will vary with the condition." *Id*. (quoting *Powell,* 175 F.3d at 111) (internal quotation marks omitted); *id*. (citing *Doe,* 15 F.3d at 267 (explaining that a constitutional right to privacy for some diseases is greater than for others because while "there are few matters that are quite so personal as the status of one's health, and few matters the dissemination of which one would prefer to maintain greater control over," this is "especially true with regard to those infected with HIV or living with AIDS")). A medical condition is deemed to be confidential if it is "excruciatingly private and intimate [in] nature" and is "likely to provoke . . . an intense desire to preserve one's medical confidentiality." *Id*. (quoting *Powell,* 175 F.3d at 111) (internal quotation marks omitted). To date, the Second Circuit has recognized such a privacy right with respect to an individual's HIV status, *Doe,* 15 F.3d at 266–67, and transsexualism, *Powell,* 175 F.3d at 110–12.

In *Doe*, the Second Circuit explained that, as with any "serious medical condition," a person's choice to inform others that he has contracted "what is at this point invariably and sadly a fatal, incurable disease [HIV/AIDS] is one that []he should normally be allowed to make for h[im]self." 15 F.3d at 267. The court further noted that such a right is "especially true with regard to those infected with HIV or living with AIDS, considering the unfortunately unfeeling attitude among many in this society toward those coping with the disease," and further, "[a]n individual revealing that she is HIV seropositive potentially exposes herself not to understanding or compassion but to discrimination and intolerance." *Id.*

Likewise, in *Powell*, the Second Circuit held that "[l]ike HIV status as described in *Doe,* transsexualism is [an] unusual condition that is likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others." *Powell,* 175 F.3d at 111.  The Court also ruled that "[t]he excruciatingly private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter, is really beyond debate." *Id.*  Furthermore, "[i]n extending the constitutional right of privacy to cover transsexualism, [the court] recognized the 'narrow parameters' in which such a right exists." *Matson*, 631 F.3d at 64 (quoting *Powell,* 175 F.3d at 112).

Most recently, in *Matson*, the Second Circuit upheld the Rule 12(b)(6) dismissal of a privacy claim where the plaintiff alleged that the defendants had violated her constitutional right to privacy by publicly disclosing her medical condition of fibromyalgia.  *Matson*, 631 F.3d at 58, 61.  The court explained that unlike HIV, fibromyalgia, although a serious condition, was not a fatal disease that "carr[ies] with it the sort of opprobrium that confers upon those who suffer from it a constitutional right of privacy as to that medical condition," *id.*, and that revealing the condition of fibromyalgia would not "expose a person . . . to discrimination and intolerance." *Id.* at 67 (quoting *Doe*, 15 F.3d at 267) (internal quotation marks omitted).  The court further noted that "[a] general medical determination or acknowledgment that a disease is serious does not give rise *ipso facto* to a constitutionally-protected privacy right," *id.* at 65, and "[i]n considering claims that a constitutional right of privacy attaches to various serious medical conditions, we also proceed on a case-by-case basis.  In doing so, we examine all the relevant factors that cut both in favor of and against extending privacy protection to such medical conditions." *Id.* at 66–67.

Plaintiff here asks the Court to extend the right to privacy to Hepatitis C patients.

11

Plaintiff alleges that Hepatitis C is a serious disease that is prevalent among the prison population and carries a great deal stigma.  Pl.'s Opp. Mem. Doc. 25-1 at 6.  Specifically, Plaintiff states:  "[Hepatitis C] is life-threatening; contributes to pre-conditions of other infirmities and is communi[c]able and infectious.  In prison circles [Hepatitis C] is closely associated with AIDS and most people infected with HIV/AIDS are coinfected with Hep[a]titis."  *Id*.  He further alleges that after Nurse Furco's disclosure, he was "shunned by certain inmates at Sing Sing in the manner of playing contact sports or sharing of cigarett[e]s."  *Id*. at 7.

In *Watson v. Wright,* 08 Civ. 62 (NAM) (GJD), 2010 WL 55932 (N.D.N.Y. Jan. 5, 2010), the Western District of New York held that there is "no basis in *Powell* and its progeny for holding that, in a prison setting, . . . Hepatitis C . . . is the type of condition that gives rise to constitutional protection."  2010 WL 55932, at *1 (citing *Powell*, 175 F.3d at 112); *see also id.* (citing *Hamilton v. Smith*, 06 Civ. 805 (GTS) (DRH), 2009 WL 3199531, at *15 n.18 (N.D.N.Y. Jan. 13, 2009), *report and recommendation adopted as modified*, 06 Civ. 0805 (GTS) (DRH), 2009 WL 3199520 (N.D.N.Y. Sept. 30, 2009) (inmate had no right to privacy concerning high blood pressure, high cholesterol, and Hepatitis A); *Rush v. Artuz*, 00 Civ. 3436 (LMM), 2004 WL 1770064, at *12 (S.D.N.Y. Aug. 6, 2004) (inmate had no right to privacy regarding wrist injury and stomach problems); *Rodriguez v. Ames,* 287 F. Supp. 2d 213, 220 (W.D.N.Y.2003) (inmate had no right to privacy concerning treatment for proctitis)).  The *Watson* court further explained:

> Hepatitis C has been held to be a serious medical condition for Eighth Amendment purposes . . . ; however, there is no basis in the case law to hold that, in the prison context, it is the type of unusual serious medical condition that, if disclosed, is likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others, *Powell,* 175 F.3d at 111 . . . , or expose a plaintiff to 'discrimination and intolerance,' [*Doe,* 15 F.3d at 267] so as to give rise to a Fourteenth Amendment right to privacy.  The *Powell* rationale has been extended to only one additional medical condition:  the district

12

> court in *Fleming v. State Univ. of N.Y.,* 502 F. Supp. 2d 324, 342-44 (E.D.N.Y. 2007), found a Fourteenth Amendment privacy violation where a doctor alleged that his residency program had disclosed his sickle-cell anemia to a prospective employer, and defendants did not have a substantial interest in disclosure.  The interests of the individual and the state in the prison setting (as in *Powell* and the instant case) differ substantially from those at issue in *Fleming,* and the rationale in *Fleming* does not support a privacy claim in the case at bar.

*Id*. at *1 n.1.  *But see Makas v. Miraglia*, 05 Civ. 7180 (DAB) (FM), 2007 WL 152092, at *10 (S.D.N.Y. Jan. 23, 2007) ("Although the dissemination of information about cholesterol or thyroid levels to officials outside the [New York State Office of Mental Health] seems innocuous, [plaintiff] suggests that they may have also been privy to information about whether he has syphilis or hepatitis, conditions which arguably could subject him to opprobrium and which are unrelated to the issue of his eligibility to be released from a secure environment.").

However, the Court here need not decide whether Plaintiff possessed a right to privacy in the disclosure of his Hepatitis C status.  Even if Plaintiff did have a right to privacy over the disclosure of his Hepatitis C condition, prison officials "can impinge on that right . . . to the extent that their actions are 'reasonably related to legitimate penological interests.'"  *Powell*, 175 F.3d at 112 (citation omitted).  In *Watson*, the court held that "the disclosure of medical information during a [prison] grievance proceeding, where the information is related to that proceeding[,] does not violate an inmate's right to privacy, whether the disclosure is to non-medical staff or to inmates who are on the [Grievance Committee]."  2010 WL 55932, at * 8; *id*. at *1 (*comparing Gowins v. Greiner*, 01 Civ. 6933 (GEL), 2002 WL 1770772, at *9 (S.D.N.Y. Jul. 31, 2002) (submission of plaintiff's medical record in response to his grievance concerning his medical treatment was reasonably related to the legitimate penological interest of adjudicating the grievance), *with Powell*, 175 F.3d at 112 ("gratuitous" disclosure of transsexual inmate's confidential medical information as humor or gossip is not reasonably related to a legitimate penological interest)).  Plaintiff here argues that the grievance hearing "was premised

13

on receiving accommodations for arthritis and neurop[a]thy conditions." Pl.'s Opp. Mem. Doc. 25-1 at 7.  However, in Plaintiff's statement of facts, he alleges that Nurse Furco revealed his Hepatitis C status while Plaintiff was discussing how he could not tolerate specific medications because of liver problems.  Compl., Ex. C.  Hepatitis C is an infectious disease which affects the liver.  *See Hilton v. Wright*, 673 F.3d 120, 123 (2d Cir. 2012); *see also* Pl.'s Opp. Mem. Doc. 25-1 at 8.  Therefore, by discussing which medications affected his liver, Plaintiff effectively put his Hepatitis C condition at issue at the hearing.  Thus, as a matter of law, the disclosure was reasonably related to the legitimate penological interest of adjudicating the grievance and does not constitute a violation of Plaintiff's right to privacy.  Accordingly, Plaintiff's right to privacy claim is DISMISSED.

### iii.  Equal Protection Clause Claim

Plaintiff alleges that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by treating him differently from other inmates with infectious/communicable diseases, including individuals with Hepatitis C, "[b]ecause the [D]efendants did not expose the[] health status [of those inmates] before non[-]medical staff or other inmates."  Pl.'s Opp. Mem. Doc. 25-1 at 8.  Plaintiff further asserts that he suffers from five "impairments" which he believes classify him as disabled under the ADA:  (1) Hepatitis C; (2) drug addiction and alcoholism; (3) Post-Traumatic Stress Disorder; (4) rheumatoid arthritis/neuropathy; and (5) cosmetic disfigurement.  *Id*.

The Equal Protection Clause provides that "all persons similarly circumstanced shall be treated alike."  *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (quoting *F. S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)).  To prove an equal protection violation, claimants must prove purposeful discrimination by a government actor, which is directed at a suspect class, such

14

as a race, national origin, sex or religion.  *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 615 (S.D.N.Y. 2013) (citations omitted).  A plaintiff may plead intentional discrimination in violation of the Equal Protection Clause in "several ways," *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000), including by pointing to (1) "a law that expressly classifies on the basis of [a protected category]"; (2) "a facially neutral law or policy that has been applied in an unlawfully discriminatory manner"; or (3) "a facially neutral policy that has an adverse effect and that was motivated by discriminatory animus."  *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009) (citation and internal quotation marks omitted).  In the prisoner context, in order to establish an equal protection violation, the plaintiff must show that "the disparity in treatment cannot survive the appropriate level of scrutiny which . . . means that he must demonstrate that his treatment was not reasonably related to any legitimate penological interests."  *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir. 2005) (quoting *Shaw v. Murphy,* 532 U.S. 223, 225 (2001)) (internal quotation marks omitted).

Here, Plaintiff does not allege that any law or policy expressly classifies on the basis of disability or Hepatitis C status, *see* Defs.' Mem. 8; however, the Court construes the unclear allegations in the Complaint to state that Sing Sing had a policy of disclosing inmates' Hepatitis C status during grievance hearings.  As an initial matter, "inmates with Hepatitis C, without more, do not fall within the type of express protected classification in *Brown* for which a plaintiff is not required to establish a similarly situated group . . . ."  *McKenna v. Wright*, 01 Civ. 6571 (WK), 2002 WL 338375, at *12 n.12 (S.D.N.Y. Mar. 4, 2002).[4]  Furthermore, Sing Sing's alleged policy would only violate the Equal Protection Clause where its adverse effects reflect

---

[4] The Court notes that persons with disabilities are not considered to be a suspect class for equal protection purposes, and, accordingly, a claim asserting differential treatment based on disability is reviewed pursuant to rational basis scrutiny.  *Bowens v. Fed. Bureau of Prisons*, 12 Civ. 5591 (PKC), 2013 WL 3038439, at *8 (S.D.N.Y. June 18, 2013) (citing *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U .S. 356, 366–67 (2001)).

purposeful discrimination. *McKenna*, 2002 WL 338375, at *11. "Discriminatory purpose 'implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its *adverse effects* upon an identifiable group." *Id*. at *12 (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 50 (2d Cir. 1999)) (internal citation marks omitted). Here, Plaintiff's papers are devoid of any allegation that Plaintiff's medical condition was disclosed *because* of its effect on him as an individual with Hepatitis C. *See generally McKenna*, 2002 WL 338375, at *12 (citing *Hayden*, 180 F.3d at 50–51 (affirming dismissal of equal protection claim where plaintiffs' allegations were insufficient to establish that county officials had acted because of a desire to adversely affect the plaintiffs)).

However, in his opposition papers, Plaintiff asserts that his equal protection claim is based on a "class of one" theory. Pl.'s Opp. Mem. Doc. 25-1 at 8. Viewing the facts in the light most favorable to Plaintiff, he alleges that Nurse Furco arbitrarily disclosed his Hepatitis C status at the July 21 grievance hearing, and that other inmates with "infectious/communicable diseases," including "[Hepatitis C]/HIV/AIDS/MRSA/Tuberculosis" did not have their medical status "expose[d]" before non-medical staff and other inmates at grievance hearings. *Id.* Unlike the classic equal protection claim, the "class of one" equal protection guarantee "extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Miner v. N.Y. State Dep't of Health*, 02 Civ. 3180 (MBM), 2004 WL 1152491, at *4 (S.D.N.Y. May 24, 2004) (quoting *Harlen Assocs. v. Incorporated Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir. 2001)) (internal quotation marks omitted). To state a valid equal protection "class of one" claim, a plaintiff must allege that (1) he has been intentionally treated differently from others similarly situated, and (2) there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech,* 528 U.S. 562, 564

(2000).  A plaintiff alleging a class of one violation must, *inter alia*, "show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Green v. McLaughlin*, 480 F. App'x 44, 47 (2d Cir. 2012) (quoting *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010)) (internal quotation marks omitted).

In *Green*, a *pro se* prisoner case asserting a class of one claim, the Second Circuit held that where plaintiff described the inmates to which he compared himself as "other inmates at [the correctional facility] with medical holds," and "other inmates with acute medical problems," "[n]either of these broad categories [was] sufficient to demonstrate the level of specificity required by class-of-one claims as they do not permit an inference that the members of these classes are so similar [plaintiff] that no rational person could see them as different."  480 F. App'x at 47-48 (citing *Ruston*, 610 F.3d at 60) (internal quotation marks omitted).  Moreover, and "[m]ost importantly," the plaintiff in *Green* "[did] not identif[y] any other similarly situated inmates with diabetes whose medical holds were not rescinded and who were allowed to remain at [the correctional facility]."  *Id*. at 48.  *See also Ruston*, 610 F.3d at 59 (finding that plaintiffs' failure to allege "specific examples" of similarly situated persons receiving differential treatment from the defendant town was fatal to their "class of one" equal protection claim).  Here, Plaintiff generally compares himself to other inmates with "infectious/communicable" diseases, which he alleges include, but presumably is not limited to, Hepatitis C, HIV, AIDS, MRSA, and Tuberculosis.  As in *Green*, Plaintiff's category is too broad to survive dismissal since it does not allow an inference that the members of this class are so similar to Plaintiff that no one could view them as different.  *Green*, 480 F. App'x at 47-48.  Accordingly, Plaintiff's equal protection claims are DISMISSED.

### iv.  Eighth Amendment Claims

Plaintiff alleges that Defendants violated his Eighth Amendment rights by:  (1) Nurse Furco's improper disclosure of his confidential medical information to nonmedical staff, which resulted in his being "shunned by certain inmates at Sing Sing in the manner of playing contact sports or sharing of cigarett[e]s," Pl.'s Opp. Mem. Docs. 25-1 at 7, 9, 25-2 at 1; (2) Nurse Furco's attendance at the July 28 grievance hearing addressing her prior medical disclosure, Compl. at 5; (3) Superintendent Heath's failure to install handrails on a portion of prison walkway which Plaintiff alleges caused him to fall and injure his shoulder, *id.* at 8; and (4) Superintendent Heath's failure to correct a policy or custom of not accommodating disabled inmates.  *Id.*

The Eighth Amendment provides that "cruel and unusual punishments [shall not be] inflicted," U.S. Const. amend. VIII, and "[t]hat rule, applicable to the states through the Fourteenth Amendment, . . . is violated by unnecessary and wanton inflictions of pain and suffering."  *Walker v. Schriro,* 11 Civ. 9299 (JPO), 2013 WL 1234930, at *11 (S.D.N.Y. Mar.26, 2013) (citations omitted).  Prison officials are responsible for the safety of prison inmates; however, "[not] every injury suffered by one prisoner at the hands of another that translates into constitutional liability for [the] prison officials [involved]."  *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).  Rather, prison officials violate the Eighth Amendment only when two conditions are satisfied:  (1) the alleged deprivation must, objectively speaking, be "sufficiently serious," and (2) the alleged perpetrator must possess a "sufficiently culpable state of mind."  *Id.* (citations and internal quotation marks omitted).  In the prison setting, "courts have defined this culpability as 'deliberate indifference' to the health and safety of inmates."  *Randle v. Alexander*, 10 Civ. 9235 (JPO), 2013 WL 2358601, at *5 (S.D.N.Y. May 30, 2013) (citing *Farmer,* 511 U.S. at 834;

*Wilson v. Seiter,* 501 U.S. 294, 302–04 (1991); *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)).

The objective analysis of the seriousness of the conduct in question requires an examination of the alleged unconstitutional conditions.  Although the Constitution does not mandate a comfortable prison setting, *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981), prisoners are entitled to "basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety."  *Helling v. McKinney,* 509 U.S. 25, 32 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,* 489 U.S. 189, 199–200 (1989)).  Therefore, to establish the objective element of an Eighth Amendment violation, a prisoner "must prove that the conditions of his confinement violate contemporary standards of decency."  *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir. 2002).

To satisfy the subjective element, which hinges upon the accused prison official's subjective intent, the plaintiff must allege "something more" than mere negligence.  *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir. 2000) (quotations omitted).  An injured prisoner can recover under the Eighth Amendment only if the injury was a product of the prison official's "purposeful subjection of the prisoner to a 'substantial risk of serious harm' or from the official's deliberate indifference to that risk."  *Fischl v. Armitage,* 128 F.3d 50, 55 (2d. Cir. 1997) (quoting *Farmer,* 511 U.S. at 834).  An official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Cuoco,* 222 F.3d at 107 (citations and internal quotation marks omitted).

Prisoners generally assert Eighth Amendment claims under three basic theories:  (1) denial of proper medical care; (2) unconstitutional conditions of confinement unrelated to

medical treatment; and (3) failure to protect against harm by other inmates. *See Randle*, 2013 WL 2358601, at *6. Liberally reading the Complaint, Plaintiff here asserts Eighth Amendment claims under the second and third theories.[5]

### 1.   Failure to Protect:  Nurse Furco's Disclosure of Hepatitis C Status

Plaintiff alleges that Nurse Furco's disclosure of his Hepatitis C status exposed him to being "shunned by certain inmates at Sing Sing in the manner of playing contact sports or sharing of cigarett[e]s." Pl.'s Opp. Mem Docs. 25-1 at 7, 9, 25-2 at 1. Liberally construing Plaintiff's allegation, he alleges a failure to protect claim. As previously discussed, the Eighth Amendment "imposes a duty on prison officials to 'take reasonable measures to guarantee safety of the inmates.'" *Nunez v. Goord,* 172 F. Supp. 2d 417, 430 (S.D.N.Y. 2001) (quoting *Farmer,* 511 U.S. at 832). Therefore, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Hines v. Lacy,* No. 98–2961, 189 F.3d 460, at *3 (2d Cir. Aug. 20, 1999) (citations and internal quotation marks omitted). To satisfy the objective component of a failure to protect claim, "the inmate must show that he is incarcerated under conditions posing a *substantial risk of serious harm." Randle*, 2013 WL 2358601, at *9 (quoting *Farmer,* 511 U.S. at 835) (emphasis in original). The objective prong can be met even where the inmate does not actually suffer serious physical injury. *Id*. at *10 (quoting *Heisler v. Kralik*, 981 F. Supp. 830, 836 (S.D.N.Y. 1997), *aff'd sub nom. Heisler v. Rockland Cnty.*, 164 F.3d 618 (2d Cir. 1998) ("[T]he Court does not accept defendants' position that prison officials are only liable for failing to protect an inmate from an attack by another inmate when a serious physical injury has

---

[5] Although Plaintiff's Complaint and memoranda include documentation of medical treatment following his fall in the walkway, he does not challenge the care he received and the Court does not read the Complaint to assert a violation for improper medical treatment for his injuries. *See generally* Pl.'s Opp. Mem. Doc. 25-2 13 (discussing that Plaintiff "is not claiming a SLIP AND FALL lawsuit, rather [he] is proclaiming that [D]efendant Heath is responsible for failing to provide a[n] environment free of safety hazards which included handrails throughout a section of the prison that was degenerant [sic] and decadent, in need of repairs.").

resulted from the attack.  If accepted, such an analysis would assess a prison official's actions based on hindsight, rather than on the facts and circumstances of which the official was aware at the time he acted or failed to act."  (internal footnote omitted)).  Therefore, "[i]n assessing whether the risk of an inmate's violence against other inmates is 'sufficiently serious' to trigger constitutional protection, the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a 'substantial risk of serious harm.'"  *Id.* (quoting *Heisler*, 981 F. Supp. at 837).

In *Powell*, the Second Circuit recognized that an Eighth Amendment violation could exist where the disclosure of an inmate's HIV status "place[s] [an] inmate in harm's way."  *Powell*, 175 F.3d at 115.  Here, while it is plausible that in certain circumstances, knowledge of an inmate's Hepatitis C state might create a substantial risk of serious harm, Plaintiff does not allege that the disclosure of his status exposed him to *any* danger, let alone substantial risk of serious harm.  Plaintiff merely alleges that he was "shunned" by "certain inmates" when playing contact sports or sharing cigarettes.  Pl.'s Opp. Mem. Docs. 25-1 at 7, 9, 25-2 at 1.  *See Dawes v. Walker,* 239 F.3d 489, 494 (2d Cir. 2001) (on a motion to dismiss, no substantial risk where plaintiff did not "contend that [fellow inmate] assaulted him . . . threatened him with physical violence nor even that there were credible rumors that [fellow inmate] intended to attack him"), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002); *Petty v. Goord,* 00 Civ. 803 (JSR), 2008 WL 2604809, at **2, 5 (S.D.N.Y. June 25, 2008)  (on summary judgment, "mere fact that [racial and HIV-based taunts by officer] may have subjected [plaintiff] to opprobrium cannot objectively be considered sufficiently serious to render the conditions of . . . confinement inhumane"); *Green v. City of New York Dep't of Corr.*, 06 Civ. 4978 (LTS) (KNF), 2008 WL 2485402, at *6 (S.D.N.Y. June 19, 2008) ("Although the death threats alleged by Plaintiff were

sufficiently *atypical and significant* . . . , the mere existence of such threats, without any allegation that physical harm actually existed or was imminent during the entire six or seven month period in which he was allegedly subjected to such threats, or without any allegation that any inmate perceived to be a Neta member was physically harmed, do not render plausible Plaintiff's claim that he was subject to a *substantial risk of serious harm*" on a motion to dismiss) (emphasis in original).  Absent the requisite substantial risk of serious harm, Plaintiff cannot prove a deliberate indifference claim.

Nevertheless, even assuming that Plaintiff had alleged a substantial risk of serious harm from Nurse Furco's disclosure, Plaintiff has failed to adequately allege that Nurse Furco, or the other Defendants, knew of or disregarded the fact that her comments would subject Plaintiff to a substantial risk of serious harm.  To satisfy the subjective prong, "the prison official [must] have a 'sufficiently culpable state of mind,' to wit, be deliberately indifferent to the harmful conditions."  *Id*. at *9 (quoting *Heisler*, 981 F. Supp. at 836).  In his Complaint, Plaintiff asserts that "it is emphatically impossible [for Nurse Furco] to inadvertently divulge information that one took an oath to uphold and protect . . . [and instead acted] with motive, intent, recklessness and indifference."  Compl. at 4.  As previously discussed, however, Nurse Furco's disclosure was made in response to Plaintiff's discussion of his liver problems during the grievance hearing, and, according to Plaintiff, was "blurted out" by her.  *Id*., Ex. C.  At most, this disclosure could be characterized as negligent behavior, which is not actionable under Section 1983. Accordingly, to the extent that Plaintiff alleges an Eighth Amendment violation from Nurse Furco's disclosure, such a claim is DISMISSED.

2.   Nurse Furco's Presence at Second Grievance Hearing

Plaintiff alleges that allowing Nurse Furco to attend the July 28, 2011 grievance hearing, even after he requested that she leave, demonstrates "deliberate indifference" in violation of the Eighth Amendment.  Compl. at 5.  Plaintiff, however, does not specify how her presence at the grievance hearing violated his rights, but this is essentially a claim that Nurse Furco interfered with Plaintiff's grievance process.

"To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state . . . law.'"  *Velez v. Levy,* 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo,* 446 U.S. 635, 640 (1980)) (ellipsis in original).  The law is clear that "prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment."  *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (citations omitted); *see also Pine v. Seally,* 09 Civ. 1198 (DNH) (ATB), 2011 WL 856426, at *8 (N.D.N.Y. Feb. 4, 2011), *report and recommendation adopted in part sub nom. Labib v. Seeley*, 09 Civ. 1198, 2011 WL 856421 (N.D.N.Y. Mar. 9, 2011) ("The law is well-settled that inmates do not have a constitutional right to grievance procedures"); *Shell v. Brzezniak,* 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) ("inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable [Section] 1983 claim") (citation omitted).  Accordingly, "[c]ourts regularly dismiss claims brought to remedy alleged violations of inmate grievance procedures."  *Edwards v. Horn*, 10 Civ. 6194 (RJS) (JLC), 2012 WL 473481, at *11 (S.D.N.Y. Feb. 14, 2012), *report and recommendation adopted*, 10 Civ. 6194 (RJS) (JLC), 2012 WL 760172 (S.D.N.Y. Mar. 8, 2012) (citing *Muhammad v.*

*McMickens*, 86 Civ. 7376 (SWK), 1988 WL 7789, at *3 (S.D.N.Y. Jan. 25, 1988)).

Accordingly, because Plaintiff's claim against Nurse Furco for alleged violation of the inmate

grievance process has no constitutional basis, this claim is DISMISSED.  *See id.*[6]

### 3.   Conditions of Confinement:  Failure to Install Handrails in Walkway

Plaintiff also alleges that Superintendent Heath alone violated the Eighth Amendment by

failing to install hand rails on the top portion of the walkway in the school tunnel, especially

since the tunnel had already been "deem[ed] to be in need of repairs."  Compl. at 8; Pl.'s Opp.

Mem. Doc. 25 at 8.  In his opposition papers, Plaintiff further alleges that Superintendent Heath

"[d]id not make available another mode of travel within the facility to avoid the prospect of an

injury occurring on the state property he was responsible for."  Pl.'s Opp. Mem. Doc. 25-2 at 5.[7]

However, Plaintiff also admits that, at some unspecified point in time, he was "finally

accommodated with a bus pass."  *Id*. at 6.  According to Plaintiff, "[t]his was done by the diligent

efforts of plaintiff, via grievance and [the] medical department."  *Id*.  Reading the Complaint

with special solicitude, Plaintiff asserts a conditions of confinement claim against Superintendent

Heath for failing to install hand rails on the top portion of the walkway.

Prison officials may not expose inmates to conditions that "pose an unreasonable risk of

serious damage to [their] health," *Helling*, 509 U.S. at 35, nor may States deprive prisoners of

their "basic human needs," including "food, clothing, shelter, medical care, and reasonable

---

[6] To the extent that Plaintiff's Complaint can be construed to allege a constitutional violation from Superintendent Heath's failure to accept Plaintiff's grievance filing, Compl. at 7-8, such a claim is DISMISSED under the same grievance procedure rationale.

[7] Plaintiff also alleges that:  "The deliberate indifference component sets in when upon being notified that a pre-exiting hazard was prevalent in the walkway area, nothing had been done nor had the defendant sought accommodations for the plaintiff or accommodate plaintiff in accordance with the Americans with Disability Act requirements for disabled persons."  Pl.'s Opp. Mem. Doc. 25-2 at 6.  The Court addresses Plaintiff's ADA claim below.

safety." *Id.* at 32.  As discussed above, "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson,* 501 U.S. at 298 (citation and internal quotation marks omitted).  To satisfy the objective prong, a plaintiff "must prove that the conditions of his confinement violate contemporary standards of decency," *Phelps,* 308 F.3d at 185, and "only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim." *Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir. 1999) (citing *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)).  Indeed, the Eighth Amendment "is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law." *Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir. 2003).

Defendants argue that Plaintiff's allegation is simply a negligence claim, which is not actionable under Section 1983.  Defs.' Mem. 14 (citing *Flowers v. City of New York,* 668 F. Supp. 2d 574, 578 (S.D.N.Y. 2009) ("Any claim against the City for the slip and fall [in shower] that resulted in [inmate] plaintiff's ankle injury—a garden variety tort—is not cognizable under Section 1983 . . . .")).  The Court agrees and finds that the lack of handrails—even in light of a walkway renovation—does not constitute a violation of the Eighth Amendment.  *Shariff v. Coombe*, 655 F. Supp. 2d 274, 300-01 (S.D.N.Y. 2009).  In *Shariff*, the plaintiffs, disabled inmates who depend on wheelchairs for mobility, alleged that they had fallen and suffered injuries as a result of the presence of potholes and broken concrete in the prison yards.  655 F. Supp. 2d at 300.  In granting summary judgment on this claim, the court held that plaintiffs' allegations fell short of the type of condition that is proscribed by the Eighth Amendment.  Specifically, the court noted:

> Just as courts have found that wet or slippery floors or a prison's failure to equip showers with non-slip mats are not the types of conditions warranting relief under the Eighth Amendment, it appears to the Court that a potholed recreation yard similarly does not run afoul of the Constitution.  *See, e.g., Adams v. Perez,* No. 08

Civ. 4834 (BSJ) (MHD), 2009 WL 513036, at *3 (S.D.N.Y. Feb. 27, 2009) (stating that courts have repeatedly held that 'a failure on the part of prison officials to provide shower mats does not rise to the level of a constitutional violation'); *Sylla v. City of New York,* No. 04–cv–5692 (ILG), 2005 WL 3336460, at *3 (E.D.N.Y. Dec. 8, 2005) (explaining that '[c]ourts have regularly held that a wet or slippery floor does not pose an objectively excessive risk to prisoners'); *Williams v. Dillon,* No. 93–3127–DES, 1993 WL 455442, at *1 (D. Kan. Oct. 28, 1993) (observing that '[e]ven if the absence of a shower mat contributed to plaintiff's fall, it would still fail to evidence the kind of condition proscribed under the eighth amendment').

*Id*. at 300-01.  *Compare Carr v. Canty*, 10 Civ. 3829 (JPO), 2012 WL 3578742, at *2 (S.D.N.Y. Aug. 16, 2012) ("Plaintiffs allegation that a floor at Rikers Island was flooded by a broken pipe [for approximately four months] does not satisfy the first prong of stating a conditions-of-confinement claim"); *Adams*, 2009 WL 513036, at *3 ("Thus, even assuming Defendants were aware that inmate showers were not equipped with rubber mats—both before Plaintiff filed her grievance and after Plaintiff's grievance was granted—Plaintiff is not entitled to relief because Defendants' transgression was not 'sufficiently serious'") *and Dorsey v. Clark*, 05 Civ. 1239 (MEF), 2007 WL 1266857, at *4 (M.D. Ala. May 1, 2007) (holding that plaintiff's allegation that jailers failed to repair a broken handrail in a stairwell "suggests nothing more than a lack of due care in the nature of negligence," and is insufficient to establish a constitutional violation), *with Armstrong v. Breslin*, 05 Civ. 2876 (ARR), 2006 WL 436009, at *3 (E.D.N.Y. Feb. 22, 2006) (finding sufficient pleading of the objective prong of the deliberate indifference test when plaintiff alleged that failure to provide ladder access to ascend to and descend from a top bunk in a prison cell posed a sufficiently serious risk to his safety.  The court noted that, in addition to providing evidence of injuries sustained due to the lack of a ladder, plaintiff "support[ed] his claim that the bunk bed configuration posed a safety risk to inmates by demonstrating that there were grievances made by other inmates about the lack of ladders and safety railings on the bunk

beds."). Here, the Court finds that the alleged failure to provide handrails on a limited portion of a prison walkway does not amount to an Eighth Amendment violation.

The Complaint also fails to satisfy the subjective component of the deliberate indifference test because "the question is whether Defendant[] [Heath's] disregard for a known danger precipitated Plaintiff's injury." *Carr*, 2012 WL 3578742, at *2 (finding that "Plaintiff's argument that Defendants showed deliberate indifference by failing to repair the pipe *after* Plaintiff's fall is unavailing because the question is whether Defendants' disregard for a known danger precipitated Plaintiff's injury.") (emphasis in original); *Munoz v. Superintendent/Warden*, 11 Civ. 0111 (DNH) (GHL), 2011 WL 5080258, at *3 (N.D.N.Y. Sept. 29, 2011), *report and recommendation adopted*, 11 Civ. 111, 2011 WL 5080240 (N.D.N.Y. Oct. 25, 2011) ("On subjective grounds, courts have found that allegations like Plaintiff's fail to state a claim except where the prisoner alleges that he or she actually informed the defendant about the dangerous condition."). Under the subjective test, a defendant must be "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, . . . draw the inference and fail to take reasonable measures to abate it.'" *Jackson v. Goord,* 664 F. Supp. 2d 307, 316 (S.D.N.Y. 2009) (quoting *Trammell v. Keane,* 338 F.3d 155, 164 (2d Cir. 2003)). Here, Plaintiff does not allege that he informed anyone, much less Superintendent Heath, about the allegedly dangerous condition. *Compare Spencer v. Sylvester,* 97 Civ. 5491, 1999 WL 61644, at *3 (E.D.N.Y. Feb. 2, 1999) (dismissing Eighth Amendment claim where plaintiff did not allege that warden defendant was aware of slippery conditions on stairs and landing or that he was deliberately indifferent to the alleged conditions); *with Smolen v. Fischer*, 12 Civ. 1856 (PAC) (AJP), 2012 WL 3609089, at **6-7 (S.D.N.Y. Aug. 23, 2012) (finding adequate pleading of the subjective element when plaintiff asserted, *inter alia*, that prison officials knew that storm

windows were made of poly-carbon and highly flammable, knew of the hazard of the windows from previous fires, knew that most cell window knobs were missing, which made it impossible to open the windows in the event of a fire, and that any time a serious fire broke out at the facility, a full report of the fires and their cases had to be submitted to the one of the defendants); and *Howard v. Headley,* 72 F. Supp. 2d 118, 124 (E.D.N.Y. 1999) (holding that inmate required to perform sanitation duties despite pre-existing medical condition stated an Eighth Amendment claim against defendant prison officials, where the inmate alleged he informed officials that he could not perform work and provided them doctor's notes to support his claim).  Plaintiff here merely asserts that there were plans to renovate the tunnel, and that the plans for renovation presumably indicated that the tunnel was unsafe.  *See* Compl. at 8; Pl.'s Opp. Mem. Doc. 25-2 at 6 (after discussing Superintendent Heath's indication that the tunnel was scheduled for repairs, Plaintiff states:  "The deliberate indiffernce [sic] component sets in when upon being notified that a pre-exiting hazard was prevalent in the walkway area, nothing had been done  . . . .").  However, the CORC response to Plaintiff's grievance appeal indicates that while the tunnel was scheduled to be renovated, there were no plans to install handrails.  CORC also indicated that the plans were code compliant, indicating that the decision to renovate was not prompted by any issue arising from the lack of handrails.  Defs.' Mem. 28.  Thus, no inference can be drawn that prison officials, specifically Superintendent Heath, knew of any dangerous condition occasioned by the lack of handrails because of the plans to renovate the walkway.  Moreover, a thorough review of the Complaint, and exhibits attached thereto, reveal that Superintendent Heath only became aware of the lack of handrails during Plaintiff's post-injury grievance process.  Compl., Exs. M-O.  Accordingly, Plaintiff's conditions of confinement claim is DISMISSED.

4.  <u>Failure to Accommodate Disabled Inmates</u>

Relatedly, Plaintiff asserts that Superintendent Heath failed to correct a policy or custom of not accommodating disabled inmates, Compl. at 8, and, as an example of this policy, cites the failure "to accommodate inmates with disabilities by ensuring that that handrails were [placed] throughout the walkway that had already been deem[ed] to be in need of repairs." *Id*.  In *Nilsson v. Coughlin*, 86 Civ. 7135 (LLS), 1987 WL 12823 (S.D.N.Y. June 18, 1987), the plaintiff claimed that the prison administration was "completely indifferent to plaintiff's as well as other inmates' safety because they don't repair area's [sic] that are in the state of disrepair . . . ."  1987 WL 12823, at *3 (citation omitted).  In support of such claim, plaintiff cited to one unrepaired step, over which he and another inmate tripped.  The court held that plaintiff's "conclusory allegations" failed to state a violation of the Eighth Amendment.  *Id*.; s*ee also Castillo v. Comm'r N.Y.S. Dep't of Corr. Servs.*, 06 Civ. 858A, 2008 WL 4501881, at *2 (W.D.N.Y. Sept. 30, 2008) ("Although plaintiff does allege that the defendants have 'have adopted polices, practices and procedures which Defendants knew or should have reasonably known would be ineffective in delivering medical treatment and care,' [citation omitted], such conclusory allegations are insufficient to sustain a § 1983 claim.").

Furthermore, Plaintiff has also failed to allege sufficient personal involvement by Superintendent Heath to establish supervisory liability under 42 U.S.C. § 1983.  "There is no *respondeat superior* liability in § 1983 cases."  *Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir. 1995) (citing *Monell v. Dep' t of Soc. Servs.,* 436 U.S. 658, 691 (1978)).  "[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."  *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir. 2003) (citation and internal quotation marks omitted).  Rather, "a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676.  "A supervisory official personally participates in challenged conduct not only by direct participation, but by (1) failing to take corrective action; (2) creation of a policy or custom fostering the conduct; [or] (3) grossly negligent supervision, or deliberate indifference to the rights of others." *Rolon v. Ward,* 345 F. App'x 608, 611 (2d Cir. 2009) (summary order).

A plaintiff must adequately allege facts to support a determination of supervisory liability and "conclusory, unsupported allegations of gross negligence or the existence of a policy are simply insufficient to establish liability of supervisory prison officials under § 1983." *Parris v. N.Y.S. Dep't Corr. Servs.*, 12 Civ. 1849 (JGK), 2013 WL 2257096, at *6 (S.D.N.Y. May 23, 2013) (citations and internal quotation marks omitted).  Furthermore, "[a]llegations involving only a single incident are generally insufficient to demonstrate the existence of an official policy or custom for purposes of establishing personal involvement under § 1983." *Id.* (citing *Strano v. City of New York,* 97 Civ. 0387 (RPP), 1998 WL 338097, at *5 (S.D.N.Y. June 24, 1998)); *see also id.* ("'[A]llegations as to defendants' knowledge of alleged constitutional violations [are] insufficient to impose supervisory liability' under § 1983 unless accompanied by allegations that the defendants had direct responsibility for monitoring the alleged violation or that there had been a 'history of previous episodes' putting the defendants on notice of the problem," citing *Candelaria v. Coughlin,* 91 Civ. 1117 (LBS), 1991 WL 113711, at *2 (S.D.N.Y. June 11, 1991)).

Plaintiff here alleges that Superintendent Heath did not correct a policy or custom of failing to accommodate disabled inmates but fails to site to any instances of such a policy, other than discussing the failure to provide a railing on the top portion of the walkway.  *Castillo*, 2008 WL 4501881, at *2 (citing *Covington v. Coughlin,* 93 Civ. 8372 (JSM), 1994 WL 163692, at

**2-3, (S.D.N.Y. Apr. 28, 1994) (finding that a "vague reference" to alleged unconstitutional policy is insufficient to establish personal involvement); *id.* (citing *Funches v. Reish,* 97 Civ. 7611 (LBS), 1998 WL 695904 (S.D.N.Y. Oct. 5, 1998) (dismissing deliberate indifference to medical care claim against warden of prison facility based upon conclusory allegation that warden created "custom" of denying medical care)).  Plaintiff's allegation fails to demonstrate that a policy or custom of failing to accommodate disabled inmates was in place at Sing Sing. *Parris*, 2013 WL 2257096, at *6.  Furthermore, Plaintiff fails to allege that Superintendent Heath was aware of such alleged policy and, accordingly, Plaintiff's conclusory allegations are insufficient to demonstrate the personal involvement of Superintendent Heath.  Accordingly, Plaintiff's claim against Superintendent Heath on failure to accommodate disabled inmates is DISMISSED.

### c.   HIPAA Claim

Plaintiff asserts that Defendants violated HIPAA's medical privacy regulations by Nurse Furco's allegedly improper disclosure of his Hepatitis C status during the July 21 grievance hearing.  HIPAA established standards for the protection of individual health information, and allowed the promulgation of regulations designed to protect the privacy and accuracy of individually identifiable health information.  *Morris v. NYC HRA*, 13 Civ. 1845 (RRM) (MDG), 2013 WL 3148664, at *4 (E.D.N.Y. June 19, 2013) (citing 42 U.S.C. §§ 1320d–1320d–8).  However, HIPAA does not provide a private cause of action through which individuals can enforce its provisions.  *Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) (collecting cases for proposition that HIPAA does not provide a private right of action); *Ames v. Group Health Inc.,* 553 F. Supp. 2d 187, 192 (E.D.N.Y.2008) (finding that case law is "clear that plaintiffs cannot bring a HIPAA

enforcement action due to improper disclosures of medical information."). Enforcement of HIPAA is limited to the Secretary of Health and Human Services. 42 U.S.C.A. § 300gg-22; *see Shallow v. Scofield*, 11 Civ. 6028 (JMF), 2012 WL 4327388, at *4 (S.D.N.Y. Sept. 21, 2012) (dismissing HIPAA claim because it does not create a private right of action, but rather allows authorized state authorities to bring an enforcement action). Accordingly, Plaintiff's HIPAA claims against Defendants are DISMISSED.

### d.  ADA Claim

In relation to his Eighth Amendment conditions of confinement and failure to accommodate disabled inmates claims, Plaintiff alleges that he is disabled under the ADA. Pl.'s Opp. Mem. Doc. 25-2 at 6 (after discussing Superintendent Heath's indication that the tunnel was scheduled for repairs, Plaintiff states: "The deliberate indiffernce [sic] component sets in when upon being notified that a pre-exiting hazard was prevalent in the walkway area, nothing had been done  nor had the defendant sought accommodations for the plaintiff or accommodate plaintiff in accordance with the [ADA] requirements for disabled persons."). He asserts that he suffers from five "impairments" which he believes classify him as disabled under the ADA:  (1) Hepatitis C; (2) drug addiction and alcoholism; (3) Post Traumatic Stress Disorder; (4) rheumatoid arthritis/neuropathy; and (5) cosmetic disfigurement. Pl.'s Opp. Mem. Doc. 25-1 at 8. Although Plaintiff does not actually assert an ADA claim, but rather states that he qualifies as an individual with a disability under the statute, the Court will treat this allegation as asserting a claim under the ADA.[8] Defendants do not address the validity of any potential ADA claims in their papers.

To the extent that Plaintiff is suing Defendants in their individual capacities, it is well

---

[8] Plaintiff seeks compensatory and punitive damages for all alleged violations, and has not requested any injunctive or other equitable relief.  Compl. at 11.

settled that Title II of the ADA does not authorize such actions.  *See Browdy v. Karpe,* 131 F. App'x 751, 753-54 (2d Cir. 2005) ("Title II of that statute does not provide for individual capacity suits against state officials.") (citation omitted); *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98, 107 (2d Cir. 2001); *Andino v. Fischer*, 698 F. Supp. 2d 362, 380 (S.D.N.Y. 2010).  Accordingly, any individual capacity claims are dismissed.

However, "[w]hether Defendants are subject to suit in their official capacities, . . . is '[l]ess amenable to a tidy answer.'"  *Davis v. Pallito*, 10 Civ. 154, 2011 WL 4443026, at *5 (D. Vt. June 16, 2011), *report and recommendation adopted*, 10 Civ. 154, 2011 WL 4443008 (D. Vt. Sept. 22, 2011) (quoting *Cole v. Goord,* 05 Civ. 2902 (GEL), 2009 WL 2601369, at *4 (S.D.N.Y. Aug. 25, 2009)).  Accordingly, to determine the viability of Plaintiff's ADA claim, the Court must first consider the Eleventh Amendment's limitations upon federal court jurisdiction over suits against states.  As explained by the court in *Andino*:

> To determine whether there has been a valid abrogation of sovereign immunity for purposes of a private action for damages under Title II of the ADA, the Court should apply the three-part test presented in *United States v. Georgia,* wherein the reviewing court shall determine, on a claim-by-claim basis " '(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II, but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.' " [*Goonewardena v. New York*, 475 F. Supp. 2d 310, 323 (S.D.N.Y. 2007)] (quoting *U.S. v. Georgia*, 546 U.S. 151, 159 (2006)). *If the court concludes there was no violation of Title II, the claim should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. Goonewardena*, 475 F. Supp. 2d at 323.

698 F. Supp. 2d at 377 (emphasis added).  After careful review, the Court here finds that Plaintiff has failed to allege an ADA violation, and, accordingly, the claim should be dismissed.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs or activities of a public entity, or be subjected to discrimination by any such

entity."  42 U.S.C. § 12132.  To assure that these requirements are satisfied, "reasonable

accommodation" may have to be provided to the qualified individual.  *Henrietta D. v.*

*Bloomberg,* 331 F.3d 261, 273–74 (2d Cir. 2003); *see also Felix v. N.Y.C. Transit Authority,* 324

F.3d 102, 107 (2d Cir. 2003).  To establish an ADA violation, a plaintiff must show:  (1) that he

is a "qualified individual" with a disability; (2) that the defendants are subject to the ADA; and

(3) that the plaintiff was "denied the opportunity to participate in or benefit from defendants'

services, programs, or activities, or [was] otherwise discriminated against by defendants, by

reason of [his] disabilit[y]."  *Henrietta D.,* 331 F.3d at 272.  The Supreme Court has held that the

ADA extends to state prisons.  *Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, 209

(1998) ("[T]he statute's language unmistakably includes State prisons and prisoners within its

coverage.").

      Here, however, the Court need not engage in an extensive analysis of the ADA

requirements because Plaintiff makes absolutely no allegation that he was discriminated against,

or that Defendants failed to provide him with a reasonable accommodation—i.e., railings on the

walkway or an alternative to traveling through the walkway—*because* of his disability.

*Henrietta D.,* 331 F.3d at 278 (stating that an ADA plaintiff must demonstrate that a denial of

benefits occurred "because of" the disability).  Moreover, the evidence submitted by Plaintiff

demonstrates that he was eventually accommodated with a bus pass.  Pl.'s Opp. Mem. Doc. 25-2

at 6.  Thus, Plaintiff's ADA claim is DISMISSED.

      **e.  State Law Claims**

      Federal courts have supplemental jurisdiction over state law claims if they are "so related

to claims in the action within such original jurisdiction that they form part of the same case or

controversy under Article III."  28 U.S.C. § 1367(a).  Nevertheless, a district court may decline

to exercise supplemental jurisdiction when "the district court has dismissed all claims over which

it has original jurisdiction."  28 U.S.C. § 1367(c)(3); *accord United Mine Workers v. Gibbs*, 383

U.S. 715, 726 (1966); *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998);

*Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995).  Plaintiff asserts state law claims against the

Defendants for violations of New York Public Health Law and New York Public Officer Law.

In addition, the Complaint liberally construed may also assert a negligence claim against

Superintendent Heath for failing to properly maintain the walkway.  Having dismissed all of

Plaintiff's federal claims under Rule 12(b)(6), it would be inappropriate to adjudicate his state

law claims, and thus the Court declines to exercise supplemental jurisdiction over these claims.

### f.   Leave to Amend the Complaint

Although Plaintiff has not requested leave to amend or replead his Complaint, the Court

has considered whether Plaintiff should be given an opportunity to replead.  The Second Circuit

has explained that "[a] *pro se* complaint is to be read liberally.  Certainly the court should not

dismiss without granting leave to amend at least once when a liberal reading of the complaint

gives any indication that a valid claim might be stated."  *Cuoco,* 222 F.3d at 112 (citations and

internal quotation marks omitted).  Pursuant to Rule 15(a) of the Federal Rules of Civil

Procedure, the "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ.

P. 15(a)(2).  However, even under this liberal standard, this Court finds that any attempt to

amend the pleading in this case would be futile.  As discussed in detail above, it is clear from the

Complaint that plaintiff does not have any possibility of asserting plausible Section 1983 or

ADA claims for Nurse Furco's disclosure of his medical information and his slip and fall in the

walkway of the prison. *See Cuoco,* 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of

action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied."); *see also Hayden,* 180 F.3d at 53 (holding that if plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to replead is rightfully denied.").  Additionally, the Court has already taken into account Plaintiff's opposition papers, in which Plaintiff attempted to provide additional factual support for his claims.  Because this additional information proved insufficient to state a viable claim against Defendants, further amendment would be futile.  Therefore, Plaintiff's claims are dismissed with prejudice.  *Hobson v. Fischer*, 10 Civ. 5512 (SAS), 2011 WL 891314, at *6 (S.D.N.Y. Mar. 14, 2011).[9]

---

[9] Since Plaintiff fails to state a claim that Defendants violated his constitutional rights, HIPAA, or the ADA, the Court need not address the parties' additional arguments regarding personal involvement, supervisory liability and qualified immunity.  *Gonzalez v. Sarreck*, 08 Civ. 3661, 2011 WL 5051341, at *21 (S.D.N.Y. Oct. 24, 2011) ("Because of other above[-]mentioned reasons to dismiss [plaintiff's] claims, the issue of whether Defendants were protected by the Eleventh Amendment or qualified immunity is moot and no judgment is made concerning the applicability of these defenses"); *Pecou v. Forensic Comm. Pers.*, 06 Civ. 3714 (SJF) (LB), 2010 WL 2787588, at *9 n.8 (E.D.N.Y. May 14, 2010), *report and recommendation adopted*, 06 Civ. 3714 (SJF) (LB), 2010 WL 2787587 (E.D.N.Y. July 9, 2010).

### III.     Conclusion

For the reasons set forth above, Defendants' motion to dismiss the Complaint in its entirety is GRANTED.  The Clerk of the Court is respectfully directed to terminate these motions (Docs. 25, 29), to mail a copy of this Opinion and Order to Plaintiff, and to close this case.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962). SO ORDERED.

Dated:          August 2, 2013
                New York, New York

                                                Edgardo Ramos, U.S.D.J.